_____

No. 95-1599
_____

Stephen H. Peters,                    *
                                      *
          Appellant,                  *
                                      *   Appeal from the United States
     v.                               *   District Court for the
                                      *   Eastern District of Missouri.
Union Pacific Railroad Company,       *
                                      *
          Appellee.                   *

_____

Submitted: September 13, 1995

Filed: April 1, 1996
_____

Before MAGILL, FLOYD R. GIBSON, and HENLEY, Circuit Judges.

_____

MAGILL, Circuit Judge.

Stephen H. Peters brought a conversion action in Missouri state court against Union Pacific Railroad for its refusal to return his locomotive engineer certificate.  Union Pacific Railroad successfully motioned to remove the action to federal court and to dismiss.

Peters now appeals the district court's[1] denial of remand to state court and subsequent dismissal of his state conversion action.  He argues that his motion for remand was proper because his conversion claim relied solely on Arkansas law and therefore fell outside the jurisdiction of the federal courts.  He also

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

argues that dismissal was improper because federal law did not preempt his state claim.  Because the Federal Railroad Safety Act preempts Peters' claim and because Peters failed to exhaust administrative remedies, we affirm.

## I.

Union Pacific Railroad Company (Union Pacific) employed Stephen H. Peters as a locomotive engineer from 1991 until the end of 1992.  As required by the Federal Railroad Safety Act (FRSA), Union Pacific issued Peters a locomotive engineer certificate which permitted him to operate a train locomotive on the general railway system.  45 U.S.C.S. § 431(i) (1992 & Supp. 1995).

On November 30, 1992, Peters violated several locomotive operating regulations.  Union Pacific determined, after a hearing, that Peters had operated a locomotive above the maximum allowed speed, failed to sound the whistle at railroad crossing grades, and missed a required inspection.  As a result of these findings, Union Pacific sanctioned Peters on December 14, 1992.  Consistent with Federal Railroad Administration regulations, Union Pacific suspended Peters' certificate for one month.  It also discharged Peters from further employment based on company operating rules.

The Brotherhood of Locomotive Engineers challenged Peters' dismissal by filing an appeal under the collective bargaining agreement.  After protracted discussions, the parties reached a settlement under which Peters "would be reinstated to service on a leniency basis without pay for time lost and this claim (under the collective bargaining agreement) withdrawn."  Thus, approximately six months after dismissing Peters, Union Pacific allowed him to return to work and reissued his engineer certificate.

Peters filed suit against Union Pacific in Missouri state court on January 19, 1994, claiming that Union Pacific had

converted his engineer certificate in violation of Arkansas law. Peters had requested the return of his certificate at the end of his one-month suspension period, but Union Pacific refused. Instead, Union Pacific waited until it reached a settlement with his union five months later. As a result, Peters claims he lost $45,000 in wages because Union Pacific denied him the opportunity to work as an engineer for another railroad.

Based on the federal question presented, namely whether Peters had a property right to an engineer certificate under the FRSA, Union Pacific removed the matter to federal court. Peters filed a motion to remand on the grounds that his action rested solely on the conversion of his personal property under state law. Any application of federal law, he argued, was collateral to his state tort claim. The court denied Peters' motion to remand.

Union Pacific then moved to dismiss, asserting that because the state law claim was preempted by the Federal Railroad Safety Act, 45 U.S.C.S. §§ 421-447 (1992 & Supp. 1995), and the Railway Labor Act (RLA), 45 U.S.C.S. §§ 151-163 (1992 & Supp. 1995), the court lacked subject matter jurisdiction over the state conversion claim.

The court agreed and dismissed Peters' claim under Federal Rule of Civil Procedure 12(b)(1), holding that it was preempted because it fell within the scope of the administrative remedies provided in FRSA and RLA. It noted that while Peters characterizes his claim as one of common law conversion of his engineer certificate, in reality he sought recertification, which is specifically addressed by FRSA regulations. Any right Peters had to possess the certificate derived wholly from federal law. Peters appeals the district court's denial of remand and dismissal for lack of subject matter jurisdiction.

**II.**

The propriety of removal to federal court depends on whether the claim comes within the scope of the federal court's subject matter jurisdiction. See 28 U.S.C. § 1441(b). A claim may be removed only if it could have been brought in federal court originally. See id.; Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808 (1986). Because Peters cannot establish diversity jurisdiction, see 28 U.S.C. § 1332(a), removal is proper only if Peters' claim raises a federal question. See 28 U.S.C. § 1441. A federal question is raised in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983).

A plaintiff's characterization of a claim as based solely on state law is not dispositive of whether federal question jurisdiction exists. In certain instances, the preemptive force of a federal statute is so complete that it transforms complaints styled as ordinary common-law claims into ones stating a federal claim. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987). Once an area of state law has been completely preempted, any claim based on that preempted state law claim is considered, from its inception, to raise a federal claim and therefore arises under federal law. Humphrey v. Sequentia, Inc., 58 F.3d 1238, 1242 (8th Cir. 1995) (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987)); see also Deford v. Soo Line R.R., 867 F.2d 1080, 1084 (8th Cir.) (complete preemption "prohibits a plaintiff from defeating removal by failing to plead necessary federal questions in a complaint"), cert. denied, 492 U.S. 927 (1989).

We examine the text and structure of a statute to determine if it is the "clear and manifest purpose of Congress" to preempt an

-4-

area of state law.  CSX Transp. v. Easterwood, 113 S. Ct. 1732, 1737 (1993); see also Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516-17 (1992) (explaining that the purpose of Congress is the ultimate consideration when determining whether federal preemption exists).  If the statute contains an express preemption clause, then the statutory construction should center on its plain meaning as the best evidence of Congress's preemptive intent.  This appeal requires us to define the preemptive scope of the FRSA and determine whether Peters' claim comes within it.

**A.**

Congress created the FRSA to ensure that railroad safety would be "nationally uniform to the extent practicable."  45 U.S.C.S. § 434 (1992 & Supp. 1995).  The FRSA specifically provides for the establishment of a program requiring licensing for any operator of a locomotive.  45 U.S.C.S. § 431(i).  To that end, the Department of Transportation promulgated comprehensive regulations to ensure that only qualified individuals operate trains.  49 C.F.R. §§ 240.1-240.411 (1993).  These regulations include provisions for engineer certification, denial of certification, and replacement of lost, stolen or mutilated certificates.

The FRSA contains an express preemption clause:

> [L]aws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable.  A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement.

45 U.S.C.S. § 434 (1992 & Supp. 1995) (emphasis added); see also Burlington Northern R.R. v. State of Minn., 882 F.2d 1349, 1352 (8th Cir. 1989) ("Section 434 on its face provides for broad

preemption, permitting state regulation of railroad safety in only two circumstances: (1) if the FRA has not acted to '[cover] the subject matter' of the state law, or (2) where the FRA has so acted, if the state law is necessary to eliminate an essentially local safety concern and satisfies the other specified conditions.").[2]

Pursuant to § 434, the Secretary of Transportation issued preemptive regulations concerning engineer certification. See 49 C.F.R. §§ 240.1-240.411 (1993). Included in these regulations is a specific, detailed scheme setting out dispute resolution procedures. See 49 C.F.R. §§ 240.401-240.411 (1993). The regulations establish a review board to consider petitions challenging a railroad's denial of certification or recertification, or revocation of certification. 49 C.F.R. § 240.401(a). Any person denied certification can petition the Locomotive Engineer Review Board (Board) to determine whether the denial was improper. 49 C.F.R. § 240.401(a) (1993). Any party adversely affected by the Board's decision has a right of appeal. 49 C.F.R. § 240.411 (1993). This "comprehensive remedial scheme . . . serves to confirm [the FRSA's] preemptive scope." Rayner, 873 F.2d at 65.

Operating within this framework, Union Pacific revoked Peters' locomotive engineer certificate for exceeding the authorized speed, see 49 C.F.R. § 240.307(a), and held him ineligible to hold a certificate for a period of one month. See 49 C.F.R. § 240.117(g)(3)(i).

---

[2]The FRSA's legislative history also emphasizes that railroad safety is better served by uniform federal action rather than "'by subjecting the national rail system to a variety of enforcement in 50 different judicial and administrative systems.'" Rayner v. Smirl, 873 F.2d 60, 65 (4th Cir. 1989) (citing H.R. Rep. No. 91-1194, 91st Cong., 2d Sess., reprinted in 1970 U.S.C.C.A.N. 4104, 4109), cert. denied, 493 U.S. 876 (1989).

It is against this statutory and regulatory backdrop that Peters eventually brought his Arkansas conversion claim. Peters asserts that, at the end of his thirty-day ineligibility period, he was automatically reinstated as a certified locomotive engineer, but that Union Pacific's refusal to issue a certification card precluded him from enjoying the benefits of that status. Union Pacific thereby effected a conversion of his certificate. Under Arkansas law, a prima facie conversion claim must show that the defendant intended to exercise control or dominion over the property of another. City Nat'l Bank of Fort Smith v. Goodwin, 783 S.W.2d 335, 338 (Ark. 1990). Therefore, Peters maintains, his claim presents only two questions: whether the engineer certificate constitutes property under Arkansas law, and whether Union Pacific intended to withhold his engineer certificate.

Peters argues that his conversion claim lies outside the preemptive reach of the FRSA. According to Peters, his claim does not implicate issues of railroad safety or involve matters covered by the FRSA regulations. Rather, his claim concerns only his possessory right to the certification card. The safety problems that justified the revocation of Peters' certificate were satisfied with the completion of his suspension. The FRSA regulations do not address the right of a certified engineer to possess a certification card, nor do they provide a remedy when a railroad refuses to provide the necessary certification verification. Because Peters styles his claim as a challenge to Union Pacific's refusal to return the certificate following completion of his suspension, and not a challenge of the suspension itself, he believes that the FRSA does not provide him a remedy. Based on this reasoning, Peters concludes that his conversion claim is not preempted by the FRSA.

We disagree with Peters' characterization of his claim. While

he maintains that his objective is money damages based on his right to have his certification card returned after the ineligibility period, he needs to first establish a right to certification itself. Indeed, his conversion claim depends entirely on the resolution of that one issue. For Peters to be employed as a locomotive engineer by Union Pacific or any other railroad required not merely the return of his certification card, but what the certification card represents. While Peters assumes that certification occurs automatically at the end of his ineligibility period, nothing in the regulations suggests that this is so.

Because Peters' conversion claim is necessarily a challenge to Union Pacific's certification decision, it follows that the claim comes within the scope of the FRSA regulations and is preempted. Congress has expressly preempted state laws affecting railroad safety where the Secretary of Transportation has promulgated regulations. 45 U.S.C.S. § 434. The FRSA regulations explicitly set out a comprehensive administrative adjudication system for handling certification disputes. 49 C.F.R. §§ 240.401-240.411. These regulations directly apply to Peters' conversion claim, which is predicated on a certification dispute. Any issue raised in this area is a federal issue justifying removal. See Burlington Northern R.R. v. State of Mont., 880 F.2d 1104, 1106 (9th Cir. 1989) ("The FRSA does not merely preempt those state laws which impair or are inconsistent with FRA regulations. It preempts all state regulations aimed at the same safety concerns addressed by FRA regulations." (footnote omitted)); see also Rayner, 873 F.2d at 66 ("Once the federal government acts . . . the FRSA normally preempts state regulation of that subject matter."); National Ass'n of Reg. Util. Comm'rs v. Coleman, 542 F.2d 11, 13 (3d Cir. 1976) ("[T]hese statutory provisions evince . . . a 'total preemptive intent.'").

## III.

Having established that Peters' conversion claim comes within the preemptive scope of the FRSA, we turn our attention to the district court's dismissal of Peters' claim.

Dismissal was proper in this case if Peters failed to exhaust his administrative remedies. "Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." Reiter v. Cooper, 113 S. Ct. 1213, 1220 (1993); see also United States v. Bisson, 646 F. Supp. 701, 706 (D.S.D.) ("It is fundamental that exhaustion of available administrative remedies is a prerequisite to judicial review."), aff'd, 839 F.2d 418 (1986); Rayner, 873 F.2d at 67 (dismissal for failure to pursue federal administrative remedies under FRSA).[3]

The district court properly dismissed Peters' case because he failed to exhaust the administrative remedies of the FRSA. The Department of Transportation regulations make it clear that review

---

[3]The exhaustion requirement serves four primary purposes. First, it carries out the congressional purpose in granting authority to the agency by discouraging the "frequent and deliberate flouting of administrative processes [that] could . . . encourag[e] people to ignore its procedures." Second, it protects agency autonomy by allowing the agency the opportunity in the first instance to apply its expertise, exercise whatever discretion it may have been granted, and correct its own errors. Third, it aids judicial review by allowing the parties and the agency to develop the facts of the case in the administrative proceeding. Fourth, it promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, and by perhaps avoiding the necessity of any judicial involvement at all, if the parties successfully vindicate their claims before the agency. Bisson, 646 F. Supp. at 706; see also McKart v. United States, 395 U.S. 185 (1969). Without an exhaustion requirement, people would be encouraged to ignore the administrative dispute resolution structure, destroying its utility. Andrade v. Lauer, 729 F.2d 1475, 1484 (D.C. Cir. 1984).

of a railroad decision to deny certification must occur through a review petition filed with the Federal Railroad Administration.  See 49 C.F.R. § 240.403(a); see also 45 U.S.C. § 431(f).  Peters chose to forego the administrative remedies available to him under the FRSA.  To challenge Union Pacific's decision not to issue a locomotive engineer certificate, Peters was required to first raise the issue with the Locomotive Engineers Review Board.  This Board is administratively charged with determining whether a railroad employee is entitled to certification following the end of a suspension period.  "Any person who has been denied certification . . . may petition the Federal Railroad Administration to review the railroad's decision."  See 49 C.F.R. § 240.401(a).

If Peters had followed the dispute resolution procedures created by the Secretary of Transportation, he would have petitioned the Board for review within 180 days of the railroad decision not to certify him.  The Board would then have issued a written decision including a finding of facts upon which the decision is based.  The adversely affected party would have had two levels of appeal within the administrative structure.  49 C.F.R. §§ 240.407, 240.411.  Peters chose not to avail himself of this procedure and cannot now complain that he has no available remedy.

## IV.

Because the FRSA expressly preempts state law on engineer certification disputes and because Peters failed to exhaust available administrative remedies, we affirm the district court's dismissal.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.