# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2105

_____

Michael Chapman; Terri Lynn    *
Chapman,    *
   *
       Appellants,    *   Appeal from the United States
   *   District Court for the
       v.    *   Southern District of Iowa.
   *
Lab One, a Missouri Corporation;    *
Lab One, Inc., a Delaware Corporation,    *
   *
       Appellees.    *

_____

No. 03-2269

_____

Daniel Howell,    *
   *
       Appellant,    *
   *   Appeal from the United States
       v.    *   District Court for the
   *   District of Nebraska.
Lab One, Inc., a Missouri Corporation;    *
Lab One, Inc., a Delaware Corporation;    *
Union Pacific Railroad Company, a    *
Delaware Corporation,    *
   *
       Appellees.    *

_____

Submitted: February 13, 2004
Filed: November 30, 2004 **(Corrected 12/7/04)**
**(Corrected 12/21/04**)

_____

Before MELLOY, McMILLIAN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Michael and Terri Lynn Chapman and Daniel Howell brought actions in state court alleging various state common-law causes of action against LabOne, Inc. ("LabOne") and Union Pacific Railroad Company ("Union Pacific"). The defendants removed the actions to federal district courts in Iowa and Nebraska, respectively. The district court in Iowa dismissed the Chapman case on the ground that the common-law claims were preempted by the Federal Railroad Safety Act ("FRSA"), as amended by the Federal Omnibus Transportation Employee Testing Act of 1991 ("FOTETA"), and the Railway Labor Act ("RLA"). The district court in Nebraska ruled that removal of the Howell case was proper based on the doctrine of "complete preemption" under the FRSA and the FOTETA, and then dismissed the case on the ground that the FOTETA provided no private right of action. The Chapmans and Howell appeal these dismissals, and we reverse and remand for further proceedings.

I.

The facts of these two actions are similar. Both Daniel Howell and Michael Chapman are former employees of Union Pacific. Howell was a freight conductor, and Chapman was a switchman and freight conductor. Howell and Chapman each were required to undergo a random drug test by providing a urine sample to their employer on or about January 14, 1998, and August 26, 1999, respectively. The urine

samples were forwarded to LabOne for testing. LabOne tested the samples, and found that they were "not consistent with human urine." LabOne reported the results to Union Pacific, and Union Pacific subsequently terminated Howell and Chapman. Claiming that the test results were inaccurate, Howell and Chapman each filed an action in state court alleging various state common-law theories, including negligence, breach of contract, defamation, negligent misrepresentation, fraudulent misrepresentation, interference with business relations, intentional infliction of emotional distress, and invasion of privacy. The crux of each of these claims was that LabOne did not properly test the urine samples and reported inaccurate results to Union Pacific.

The procedural postures of the two cases are slightly different. Howell brought his action in Nebraska state court against both LabOne and Union Pacific. His complaint alleged that Union Pacific was vicariously liable for the actions of its agent, LabOne. The defendants removed the action to the United States District Court for the District of Nebraska based on an assertion of federal question jurisdiction. The district court denied Howell's motion to remand, concluding that under the doctrine of "complete preemption," Howell's state-law claims should be considered federal claims arising under federal law. The district court then granted motions to dismiss filed by LabOne and Union Pacific on the ground that the FOTETA does not provide for a private right of action. The court also granted Union Pacific's motion for summary judgment on the alternative ground that Howell's claims against Union Pacific were preempted by the RLA.

Michael Chapman and his wife filed an action in Iowa state court against LabOne only. LabOne removed the action to the United States District Court for the Southern District of Iowa based on diversity and federal question jurisdiction. The district court then granted LabOne's motion to dismiss. The court reasoned that the Chapmans' claims were predicated on the manner in which LabOne tested the urine specimen and reported the results to Union Pacific, and that the FRSA and its

corresponding regulations "'substantially subsumed the subject matter' of state tort law regarding the standards for drug testing railroad employees." Accordingly, the district court found that the Chapmans' state common-law claims were preempted.

On appeal, the Chapmans and Howell contend that the district courts erred in holding that their state law claims were preempted by the FRSA, the FOTETA, and their implementing regulations.[1] In addition, Howell asserts that because his claims are not preempted by federal law, his case was improperly removed to federal court and his motion to remand the case to state court should have been granted. Because the two cases present closely related issues, we consolidated their appeals. *See* Fed. R. App. P. 3(b)(2). We review *de novo* a district court's decision that state common-law claims are preempted by federal law. *Thacker v. St. Louis Southwestern Ry. Co.,* 257 F.3d 922, 923 (8th Cir. 2001).

## II.

In 1985, the Secretary of Transportation, through the Federal Railroad Administration ("FRA"), adopted regulations to control the use of alcohol and drugs in the operation of our nation's railroads. Control of Alcohol and Drug Use in Railroad Operations, 50 Fed. Reg. 31,508 (Aug. 2, 1985) (to be codified at C.F.R. pts. 212, 217-219, 225). These initial regulations required toxicological testing of railroad employees under certain circumstances, such as after an accident or upon reasonable cause. *Id.* at 31,531. The regulations required an employee to sign a

---

[1]Howell does not argue that the district court erred in granting Union Pacific's summary judgment motion on the alternative ground that his claims were preempted by the RLA. Accordingly, the district court's judgment dismissing Union Pacific is final. Fed. R. App. P. 28(a); *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985). We do not address Howell's argument that for purposes of random drug testing, an employer is vicariously liable for a laboratory's improper testing of urine samples.

consent form in connection with drug testing, but the FRA commented that "[o]bviously, this requirement does not require an employee to waive any claim for malpractice with respect to the drawing of blood or proper handling of the samples (matters for which the practical exposure is, in any event, negligible)." *Id*. at 31,532.

The FRA implemented the random drug testing program in 1988. Random Drug Testing, 53 Fed. Reg. 47,102 (Nov. 21, 1988) (to be codified at 49 C.F.R. pts. 217, 219). The FRA's discussion of preemption in connection with its regulations focused on state legislation. After observing that "some states have enacted laws which limit or regulate drug testing by private employers," the FRA explained that "issuance of this random drug testing rule will preempt any state legislation regarding random drug testing for railroad employees, whether or not inconsistent with the final rule." 53 Fed. Reg. at 47,122.

The FRA amended its drug testing regulations in 1989, in part to remain consistent with the drug testing procedures issued by the Department of Transportation. Alcohol/Drug Regulations, 54 Fed. Reg. 53,238 (Dec. 27, 1989) (to be codified at C.F.R. pts. 217, 219, 225). At that time, the FRA added the following anti-waiver provision:

> An employee required to participate in body fluid testing . . . shall . . . evidence consent to taking of samples . . . . The employee is not required to execute any document or clause waiving rights that the employee would otherwise have against the employer, and any such waiver is void. *The employee may not be required to waive liability with respect to negligence on the part of any person participating in the collection, handling, or analysis of the specimen* or to indemnify any person for the negligence of others.

*Id.* at 53,261 (emphasis added); *see also* 49 C.F.R. § 219.11(d) (1989). The FRA believed that "as a practical matter, the employee will be fully protected from possible

harm by virtue of the employer's responsibility for selection of the collection entity and the provision of clear standards for acceptable collections," but also recognized that "FRA cannot require that employees sign away their rights against third parties." 54 Fed. Reg. at 53,242. In addition, the FRA incorporated the Secretary of Transportation's scientific and technical drug testing guidelines set forth in 49 C.F.R. pt. 40, which by then included an identical anti-waiver provision at 49 C.F.R. § 40.25(f)(22)(ii) (1989). 54 Fed. Reg. at 53,273; *see also* 49 C.F.R. § 219.701(c) (1989).

The FRA anti-waiver provision is still in effect. 49 C.F.R. § 219.11(d) (2004). The Department of Transportation revised its general drug testing regulations in 2001, but continues to prohibit employers from requiring an employee to sign a "waiver of liability . . . with respect to any part of the drug or alcohol testing process." 49 C.F.R. § 40.27 (2004).

In 1991, Congress for the first time mandated drug testing in the railroad industry by passing the FOTETA, which amended the FRSA and required the Secretary of Transportation to promulgate regulations establishing programs for drug testing railroad employees. 49 U.S.C. § 20140(b); *see also* Omnibus Transportation Employee Testing Act of 1991, Pub. L. No. 102-143, § 4, 105 Stat. 917, 957-59 (1991). Congress specifically required the Secretary of Transportation to develop comprehensive regulations regarding controlled substance testing and laboratory procedures. 49 U.S.C. § 20140(c). The statute provided, however, that its mandate of drug testing did not prevent the Secretary of Transportation from continuing in effect, amending, or supplementing any of the drug testing regulations that were in effect prior to the FOTETA. 49 U.S.C. § 20140(f).

The preemptive effect of the FRA's regulations is governed by 49 U.S.C. § 20106, which provides that a state may "adopt or continue in force a law, regulation, or order related to railroad safety" until the Secretary of Transportation

"prescribes a regulation or issues an order covering the subject matter of the State requirement."[2]  In its regulations regarding drug testing of railroad employees, the FRA provides that "issuance of these regulations preempts any State law, rule, regulation, order or standard covering the same subject matter," except for certain provisions directed at local hazards.  49 C.F.R. § 219.13(a) (2004).

## III.

The doctrine of preemption arises from the Supremacy Clause of the Constitution, which requires that state law must give way when it conflicts with or frustrates federal law.  U.S. Const. art. VI, cl. 2.; *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993).  State law is preempted when Congress expressly prohibits state regulation, when Congress implicitly leaves no room for state involvement by

[2]The current version of the statute, as amended in 2002, reads as follows:

§ 20106.  National uniformity of regulation

Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order –

(1) is necessary to eliminate or reduce an essentially local safety or security hazard;
(2) is not incompatible with a law, regulation, or order of the United States Government; and
(3) does not unreasonably burden interstate commerce.

pervasively occupying a field of regulation, and when state law directly conflicts with federal law. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (internal citation omitted); *Heart of Am. Grain Inspection Serv. v. Mo. Dept. of Agric.*, 123 F.3d 1098, 1103 (8th Cir. 1997). Federal regulations also may preempt state law, if the agency intends its regulations to have preemptive effect, and the agency is acting within the scope of its delegated authority. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699 (1984); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153-54 (1982). In the ordinary case, federal preemption is merely a defense to a plaintiff's state-law claim, and it does not alter the jurisdiction of the federal court. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

The doctrine of "complete preemption" establishes more than a defense to a state-law claim. On occasion, the Supreme Court has concluded that "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) (quoting *Metropolitan Life*, 481 U.S. at 65). When an area of state law has been "completely preempted," then any claim "purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* As such, "complete preemption" of a state-law cause of action provides a basis for removal of an action to federal court.

A.

We address first whether federal preemption is a defense to the state common-law claims advanced in the complaint filed by the Chapmans. Because the FOTETA contains an express preemption clause, we focus in the first instance on the plain language of the statute, because it "necessarily contains the best evidence of Congress' pre-emptive intent." *Easterwood*, 507 U.S. at 664. The preemption clause in § 20106 applies to "a law, regulation, or order relating to railroad safety," which

may remain in effect until the Secretary of Transportation "prescribes a regulation or issues an order that covers the subject matter of the State requirement."

In *Easterwood*, the Supreme Court held that the preemption clause of the FRSA (as then in effect) authorized the Secretary to preempt common-law claims. 507 U.S. at 675. According to former 45 U.S.C. § 434, applicable regulations could preempt any state "law, rule, regulation, order, or standard relating to railroad safety." The Court held that "these broad phrases" encompassed common-law duties, 507 U.S. at 664, and that power to preempt state common law was "clearly conferred" on the Secretary by § 434. *Id.* at 675.

After *Easterwood*, Congress superseded § 434 in the 1994 amendments to the FOTETA. The current preemption clause omits the terms "rule" and "standard," thus narrowing the preemption clause to "a law, regulation, or order" relating to railroad safety. Our court has said in *dicta*, however, that although § 20106 is "worded slightly differently" than § 434, it is "identical in substance." *Cearley v. Gen. Am. Trans. Corp.*, 186 F.3d 887, 890 n.5 (8th Cir. 1999). Without discussing the change in text, both the Supreme Court and our court have applied § 20106, in conjunction with federal regulations, to find preemption of state common-law claims. *Norfolk S. Ry. Co. v. Shanklin,* 529 U.S. 344, 358 (2000); *Bryan v. Norfolk & W. Ry. Co.*, 154 F.3d 899, 903 (8th Cir. 1998).

One might question whether the text of § 20106 provides authority for the Secretary to preempt state common law. While the terms "standard" and "rule" seem naturally to encompass the common law, and thus support the Supreme Court's conclusion in *Easterwood*, the revised text extends only to "a law, regulation, or order."[3] In *Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2002), the Supreme Court

---

[3]A report of the House Judiciary Committee concerning the 1994 amendments to the FOTETA explains the changes in text by stating that "the word 'rule' is omitted

held that a preemption clause in the Federal Boat Safety Act that applied to "a [state or local] law or regulation" was "most naturally read as not encompassing common-law claims for two reasons." *Id*. The Court observed that the article "a" before "law or regulation" implied a "discreteness" that is not present in the common law. The Court also concluded that statute's use of the terms "law" and "regulation" together showed that Congress intended to preempt only positive enactments, because a broader reading of "law" that encompassed the common law would have rendered the term "regulation" unnecessary.

Nonetheless, the Chapmans and Howell have not urged that the text of § 20106 alters the authority of the Secretary, recognized in *Easterwood* under former 45 U.S.C. § 434, to preempt state common law. Therefore, particularly in light of our court's previous statement in *Cearley*, we will assume for purposes of this decision that there is a "clear and manifest purpose of Congress" in the FRSA and the FOTETA to authorize preemption of state common-law claims relating to drug testing. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

B.

Assuming the Secretary has authority to preempt state common-law claims concerning drug testing, a common-law cause of action is preempted when the Secretary prescribes a regulation or issues an order "that covers the subject matter of

_____

as being synonymous with 'regulation[,]'" and "[t]he word 'standard' is omitted as being included in 'regulation.'" H.R. Rep. No. 103-180, at 80 (1994). By equating "standard" and "rule" with "regulation," and deleting the former terms, the report may suggest that the Committee did not believe the preemption clause was designed to extend beyond "regulations" and other positive enactments to the common law. The same report, however, also characterized the legislation as a "codification bill" that makes "no substantive changes in the law." *Id.* at 5. There is no indication whether the Senate or the President held this view.

the State requirement." 49 U.S.C. § 20106. Under this standard, "pre-emption will lie only if the federal regulations substantially subsume the subject matter" of the state common law. *Easterwood*, 507 U.S. at 664.

LabOne points to federal drug testing regulations that set forth requirements for federally mandated drug testing, including preparation for testing, specimen collection procedures, laboratory analysis procedures, quality assurance and quality control, and requirements for reporting of test results. *See* 49 C.F.R. §§ 40.21- 40.39 (1999); 49 C.F.R. § 219.701. LabOne asserts that these regulations "substantially subsume" the subject matter of the state common-law claims brought by the Chapmans and Howell, or demonstrate an intent by the Secretary impliedly to preempt the field of drug testing regulation.

In considering whether the regulations preempt state common law, we bear in mind that as with the original FRSA provision before it, the FOTETA preemption provision is "employed within a provision that displays considerable solicitude for state law in that its express pre-emption clause is both prefaced and succeeded by express savings clauses." *Easterwood*, 507 U.S. at 665. That solicitude for state law, together with the "presumption against pre-emption" in an area traditionally governed by state law, *id*. at 668, counsels hesitation before we conclude that a subject matter governed by state law is substantially subsumed by federal regulations.

We conclude that the Secretary's regulations do not preempt the common-law claims pleaded by the Chapmans. Important to our decision is a drug testing regulation promulgated by the Secretary that specifically contemplates the existence of common-law negligence actions arising from the drug testing process. In 1989, the Secretary directed that a federal employee required to participate in body fluid testing "may not be required *to waive liability with respect to negligence on the part of any person participating in the collection, handling or analysis of the specimen* or to indemnify any person for the negligence of others." 49 C.F.R. § 219.11(d) (1989)

-11-

(emphasis added). When Congress passed the FOTETA in 1991, this anti-waiver provision already was in effect, and Congress provided that the FOTETA did not prevent the Secretary of Transportation from "continuing in effect, amending, or further supplementing a regulation prescribed or order issued before October 28, 1991, governing the use of alcohol or a controlled substance in railroad operations." 49 U.S.C. § 20140(f); *see also* S. Rep. No. 102-54, at 24. Thereafter, the Secretary continued in effect this regulatory provision, which prohibits a service agent like LabOne from requiring an employee to waive "liability with respect to negligence." *See* 49 C.F.R. § 219.11(d); 49 C.F.R. § 40.25(f)(22)(ii) (1989). In 2001, the Secretary went further, amending the regulations to ensure that an employer, acting on behalf of a service agent, could not require such a waiver. 66 Fed. Reg. 41,944 (Aug. 19, 2001) (to be codified at 49 C.F.R. pt. 40); 49 C.F.R. §§ 40.27, 40.355(a) (2003).

We agree with the Ninth Circuit that "[n]egligence is a state common law tort, and it would make no sense for the regulation to prohibit requiring the employee to waive negligence claims if those claims were preempted and could not be made." *Ishikawa v. Delta Airlines, Inc.*, 343 F.3d 1129, 1133 (9th Cir.), *amended*, 350 F.3d 915 (9th Cir. 2003); *see also Drake v. Lab. Corp. of Am. Holdings*, 290 F.Supp.2d 352, 373 (E.D.N.Y. 2003). Because the regulations specifically contemplate the existence of a common-law cause of action for negligence, we do not interpret them to subsume substantially the subject matter of common-law negligence. Nor do we discern an intent of the Secretary impliedly to preempt such causes of action, particularly since an express preemption clause gives rise to an inference that implied preemption is foreclosed. *Freightliner Corp.*, 514 U.S. at 289.

At oral argument, LabOne contended that the FRA's comments to the final rule when promulgated in 1989, *see* 54 Fed. Reg. at 53,241, make it clear that the anti-waiver provision regarding liability for negligence applies to non-regulated hospitals and medical clinics, but not to regulated entities such as LabOne. We disagree. Nowhere does the regulatory history state that the anti-waiver provision applies only

to hospitals, medical clinics, or non-regulated entities. 54 Fed Reg. at 53,241-42. The FRA comments do discuss the effect, if any, of the regulation on non-regulated entities, *id.*, but this does not imply that the anti-waiver provision is inapplicable to other entities involved in the process of collection and analysis. More telling is the text of the anti-waiver provision itself, which applies to *"any person* participating in the collection, handling or analysis of the specimen," 49 C.F.R. § 219.11(d) (emphasis added), a broad class that easily encompasses an entity such as LabOne. *See* 49 C.F.R. § 219.9(a); 1 U.S.C. § 1.

We are not persuaded that the principal authorities cited by LabOne, *Peters v. Union Pacific Railroad Co.*, 80 F.3d 257 (8th Cir. 1996), and *Frank v. Delta Airlines, Inc.*, 314 F.3d 195 (5th Cir. 2002), require a different result. Although *Frank* did construe the Department of Transportation's drug testing regulations to preempt certain common-law claims, that case involved an action against an employer. *Id.* at 197. The court thus did not take into account the anti-waiver provision, which is directed to negligence on the part of others involved in the collection, handling, and analysis of specimens. *See Ishikawa*, 350 F.3d at 916. Our decision in *Peters* addressed whether regulations concerning the certification of train engineers by railroad companies preempted an employee's claim against a railroad company for alleged conversion of his engineer certificate in violation of state law. 80 F.3d at 260-61. Unlike the drug testing regulations, the rules at issue in *Peters* did not contain a provision that could be construed as a savings clause through which the Secretary preserved state common-law claims, and *Peters* is thus distinguishable.

In addition to their common-law negligence claims, the Chapmans also brought common-law claims alleging breach of contract, defamation, negligent misrepresentation, fraudulent misrepresentation, interference with business relations, intentional infliction of emotional distress, invasion of privacy, and loss of spousal consortium. As the FRA anti-waiver provision specifically addresses only negligence, there remains the question whether other common-law claims are

-13-

preempted by the federal regulations. One district court, noting the legislative history of the FOTETA (which expressed concern about state *legislation* that might preclude drug testing)[4] and the several regulatory provisions that contemplate potential lawsuits by aggrieved employees, has held that analogous drug testing regulations of the Federal Aviation Administration were only intended to preempt positive state enactments. *Drake*, 290 F.Supp.2d at 373-74 (citing S. Rep. 102-54, at 23; 40 C.F.R. § 40.29(g)(3); 49 C.F.R. §§ 40.29(h), 40.29(m), 40.35).

At least with respect to the common-law claims asserted in these actions, all of which arise from LabOne's alleged deficient performance in the drug testing process, we conclude that there is no clear and manifest purpose of the Secretary to preempt these related common-law claims. In addition to the considerations cited in *Drake*, we note that when the FRA first adopted its drug testing rule in 1988, it expressed concern about positive state enactments. The agency's final commentary observed that "some states have enacted laws which limit or regulate drug testing by private employers," and explained that "issuance of this random drug testing rule *will preempt any state legislation* regarding random drug testing for railroad employees, whether or not inconsistent with the final rule." 53 Fed. Reg. at 47,122 (emphasis added). The commentary to the anti-waiver provision at the time of its promulgation in 1989 suggests a broad interpretation of the rights retained by the employee, indicating that "the consent form should not waive any legitimate rights that the employee may have, including the right to contest the basis of the test and to insist

---

[4]The report of the Senate Committee on Commerce, Science, and Transportation observed that "[s]everal States *have enacted legislation*, or are considering doing so, to prohibit or restrict drug and alcohol testing of certain classes of individuals." S. Rep. No. 102-54, at 23 (1991) (emphasis added). The Senate Committee expressed concern that "these restrictions may impinge upon the ability of the Secretary to ensure effective implementation" of mandatory drug testing of railroad employees, and the Committee therefore "reaffirm[ed] the provisions of current law which would serve to preempt such State or local government restrictions." *Id*. at 28.

-14-

that the collection or analysis be done professionally and with reasonable care." 54 Fed. Reg. at 53,241. Furthermore, limitations on employers and service agents now included in the Department of Transportation regulations extend to securing any "waiver of liability" from an employee, not merely to a waiver of liability for negligence. *See* 49 C.F.R. §§ 40.27, 40.355(a) (2003); 49 C.F.R. § 219.701(a) (FRA regulation incorporating part 40).

In light of the presumption against preemption that we are bound to apply in this area, and the overall structure and history of the FRA's drug testing regulations, we conclude that the common-law claims alleged by the Chapmans are still available.

C.

With respect to Howell's case, it follows naturally from our previous discussion that we also do not believe this is an area where the preemptive force of a federal statute is so extraordinary that it not only provides a federal defense to a state common-law claim, but also converts any state-law cause of action into a federal claim from its inception. The doctrine of "complete preemption" has been applied primarily in cases arising under § 301 of the Labor Management Relations Act of 1947 (LMRA), *see Avco Corp. v. Machinists*, 390 U.S. 557 (1968), and the Employee Retirement Income Security Act of 1974 (ERISA), which was modeled after the LMRA. *See*, *e.g.*, *Metropolitan Life*, 481 U.S. at 64-65. In those areas, Congress intended for the federal courts to fashion a body of "federal common law" that would govern disputes arising under the federal statutes. *E.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). Given our conclusion that the applicable statute and regulations concerning drug testing do not establish an intent to preempt the substantive common law at issue, however, we also believe that Congress did not "completely preempt" the state causes of action. *See Magee v. Exxon Corp.*, 135 F.3d 599, 601-02 (8th Cir. 1998).

Moreover, we find the FRSA and the FOTETA to be distinguishable from other statutory schemes in which courts have found complete preemption. Both the ERISA and the LMRA include a specific jurisdictional provision stating that the district courts of the United States shall have jurisdiction to grant relief based on the private right of action created elsewhere in the statutes. *Metropolitan Life*, 481 U.S. at 65. We relied on the existence of similar provisions in finding complete preemption by the Indian Gaming Regulatory Act. *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 545 (8th Cir. 1996). As the district court observed, however, neither the FRSA nor the FOTETA provides a private right of action for a person aggrieved by negligence in the analysis of a drug test, and the absence of an alternative cause of action militates against a finding of complete preemption. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 26 (1983). While LabOne argues that there existed a "comprehensive regulatory scheme" by which Howell could challenge the result of his drug test, the regulations themselves declare that "[n]othing in this part may be deemed to abridge any additional procedural rights or remedies not inconsistent with this part that are available to the employee . . . at common law with respect to the removal or other adverse action taken as a consequence of a positive test result . . . ." 49 C.F.R. § 219.104(c)(4) (2003). This solicitude for state common law again distinguishes the drug testing regulatory scheme from the comprehensive administrative adjudication system for handling certification disputes that influenced our court's complete preemption analysis in *Peters*. *See* 80 F.3d at 262.

Having explored the statutory and regulatory schemes involving drug testing of railroad employees, we are not persuaded that Congress intended to "completely preempt" state law causes of action in this area. Therefore, we conclude that Howell's action should not be removed to federal court based on the existence of federal question jurisdiction.

*          *          *

-16-

For the foregoing reasons, we reverse the judgments of the district courts and remand for further proceedings not inconsistent with this opinion.

_____