# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2053

_____

In re:  Derailment Cases                      *
                                              *
_____                         *
                                              *
Larry Hill; Ruth Heil; Ernest Heil;           *
Charlotte Zephier, Individually and as        *
natural guardian and next friend of           *
Freeman Zephier; Freeman Zephier,             *
By and through his natural guardian and       *
best friend; Connie Colton-Graves,            *
Individually and as natural guardian          *
and next friend of Kyle Graves; Kyle          *    Appeal from the United States
Graves, By and through his natural            *    District Court for the
guardian and next friend Connie               *    District of Nebraska.
Colton-Graves; Theresa Wallace,               *
Individually and as natural guardian and      *
next friend of Derek Wallace, Kyle            *
Wallace and Brady Wallace; Derek              *
Wallace, By and through his natural           *
guardian and next friend; Kyle Wallace,       *
 By and through his natural guardian          *
and next friend; Brady Wallace, By and        *
through his natural guardian and next         *
friend; Laurinda Stauffer, Individually       *
and as natural guardian and next friend;      *
Frank Gonzales, Individually and as           *
next friend; Brandon Gonzales, By and         *
through his next friend; Andrew               *
Stauffer-Gonzales, By and through his         *
natural guardian and next friend; Janet       *
Craven, Individually and as natural           *
guardian and next friend; Adrianna           *

Packard, by and through her natural guardian and next friend; Serena Packard; Joni Olsen, Individually and as natural guardian and next friend; Kristen Olsen, By and through her natural guardian and next friend; Amy Olsen; Rebecca Olsen, By and through her natural guardian and next friend; Yolanda Garcia; Doris Young; Lawrence Kessler, Individually and as natural guardian and next friend of Chelsea Kessler and Logan Kessler; Marian Kessler, Individually and as natural guardian and next friend of Chelsea Kessler and Logan Kessler; Chelsea Kessler, By and through her natural guardians Lawrence Kessler and Marian Kessler; Logan Kessler, By and through his natural guardians Lawrence Kessler and Marian Kessler; Jami Olsen, Individually and as natural guardian and next friend of Aubbrianna Olsen; Aubbrianna Olsen, By and through her natural guardian and best friend; Judy Schnell, Individually and as natural guardian and next friend of Thorne Schnell and Alyssa Schnell Voorhees; Warren Voorhees, Individually; Thorn Schnell, By and through his natural guardian, Judy Schnell; Alyssa Schnell-Voorhees, By and through her natural guardian, Judy Schnell; Mary St. Onge; Jeff Wallace, Individually; Cleta Gable-Nuss,

*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*

        Plaintiffs/Appellants,     *

                          *

       v.                     *

                          *

Burlington Northern and Santa Fe     \*
Railway Company, a Delaware     \*
Corporation; Montana Rail Link, Inc.,     \*
A Montana Corporation,     \*
    \*
        Defendants/Appellees.     \*
    \*
_____     \*
    \*
Anna Stachon; Roger McCarville;     \*
McCarville-Stachon, Inc., also known     \*
as  Capri Motel,     \*
    \*
        Plaintiffs,     \*
    \*
      v.     \*
    \*
Burlington Northern and Santa Fe     \*
Railway Company, a Delaware     \*
Corporation; Montana Rail Link, Inc.,     \*
    \*
        Defendants.     \*
    \*
_____     \*
    \*
Larry Hill,     \*
    \*
        Plaintiff/Appellant,     \*
    \*
      v.     \*
    \*
Burlington Northern and Santa Fe     \*
Railway Company, a Delaware     \*
Corporation; Montana Rail Link, Inc.,     \*
a Montana Corporation,     \*
    \*
        Defendants/Appellees.     \*
    \*
_____     \*

Ruth Heil; Ernest Heil,      *

     *

        Plaintiffs/Appellants,      *

     *

       v.      *

     *

Burlington Northern and Santa Fe      *
Railway Company; Montana Rail Link,      *
Inc.,      *

     *

        Defendants/Appellees.      *

     *

_____

Charlotte Zephier, Individually and as      *
natural guardian and next friend of      *
Freeman Zephier; Freeman Zephier,      *
By and through his natural guardian      *
and best friend,      *

     *

        Plaintiffs/Appellants,      *

     *

       v.      *

     *

Burlington Northern and Santa Fe      *
Railway Company, A Delaware      *
Corporation; Montana Rail Link,      *
A Montana Corporation,      *

     *

        Defendants/Appellees.      *

     *

_____

Connie Colton-Graves Individually and      *
as Natural Guardian and Next Friend of      *
Kyle Graves; Kyle Graves, By and      *
Through His Natural Guardian and      *
Next Friend Connie Colton-Graves,      *

     *

Plaintiffs/Appellants,                *
                                      *
        v.                            *
                                      *
Burlington Northern and Santa Fe      *
Railway Company, A Delaware           *
Corporation; Montana Rail Link,       *
A Montana Corporation,                *
                                      *
        Defendants/Appellees.         *
                                      *
_____               *

Theresa Wallace, Individually and as  *
natural guardian and next friend of   *
Derek Wallace, Kyle Wallace and Brady *
Wallace; Derek Wallace, by and through*
his natural guardian and next friend; *
Kyle Wallace, by and through his      *
natural guardian and next friend; Brady *
Wallace by and through his natural    *
guardian and next friend,             *
                                      *
        Plaintiffs/Appellants,        *
                                      *
        v.                            *
                                      *
Burlington Northern and Santa Fe      *
Railway Company, A Delaware           *
Corporation; Montana Rail Link,       *
A Montana Corporation,                *
                                      *
        Defendants/Appellees.         *
                                      *
_____               *

Laurinda Stauffer, Individually, and as *
Natural Guardian and Next Friend;     *
Frank Gonzales, Individually and as   *

-5-

Next Friend; Brandon Gonzales, by and    *
through his Next Friend; Andrew           *
Stauffer-Gonzales, by and through his     *
Natural Guardian and Next Friend,         *
                                          *
    Plaintiffs/Appellants,    *
                                          *
    v.                 *
                                          *
Burlington Northern and Santa Fe          *
Railway Company; Montana Rail Link,       *
Inc., a Montana Corporation,              *
                                          *
    Defendants/Appellees.     *
                                          *
_____                     *
                                          *
Janet Craven, Individually and as         *
Natural Guardian and Next Friend;         *
Adrianna Packard, by and through her      *
Natural Guardian and Next Friend;         *
Serena Packard, by and through her        *
Natural Guardian and Next Friend,         *
                                          *
    Plaintiffs/Appellants,    *
                                          *
    v.                 *
                                          *
Burlington Northern and Santa Fe          *
Railway Company, a Delaware               *
Corporation; Montana Rail Link, Inc.,     *
a Montana Corporation,                    *
                                          *
    Defendants /Appellees.    *
                                          *
_____                     *
                                          *
Joni Olsen, Individually and as Natural   *
Guardian and Next Friend; Kristen         *

Olsen, by and through her Natural Guardian and Next Friend; Amy Olsen, by and through her Natural Guardian and Next Friend; Rebecca Olsen, by and through her Natural Guardian and Next Friend,

        Plaintiffs/Appellants,

    v.

Burlington Northern and Santa Fe Railway Company; Montana Rail Link, Inc., a Montana Corporation,

        Defendants/Appellees.
_____

Yolanda Garcia,

        Plaintiff/Appellant,

Burlington Northern and Santa Fe Railway Company, a Delaware Corporation; Montana Rail Link, Inc., a Montana Corporation,

        Defendants/Appellees.
_____

Doris Young,

        Plaintiff/Appellant,

    v.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

-7-

Burlington Northern and Santa Fe                    *
Railway Company, a Delaware                         *
Corporation; Montana Rail Link, Inc.,              *
a Montana Corporation,                              *
                                                    *
          Defendants/Appellees.                     *
                                                    *
          _____                      *
                                                    *
Lawrence Kessler, Individually, and as             *
natural guardian and next of friend of             *
Chelsea Kessler and Logan Kessler;                 *
Marian Kessler, Individually and as                *
natural guardian and next of friend of             *
Chelsea Kessler and Logan Kessler;                 *
Chelsea Kessler, by and through her                *
natural guardians Lawrence Kessler and             *
Marian Kessler; Logan Kessler, by and              *
through his natural guardians Lawrence             *
Kessler and Marian Kessler,                         *
                                                    *
          Plaintiffs/Appellants,                    *
                                                    *
          v.                                        *
                                                    *
Burlington Northern and Santa Fe                    *
Railway Company, a Delaware                         *
Corporation; Montana Rail Link,                     *
a Montana Corporation,                              *
                                                    *
          Defendants/Appellees.                     *
                                                    *
          _____                      *
                                                    *
Jami Olsen, Individually and as natural            *
guardian and next friend of Aubbrianna            *
Olsen; Aubbrianna Olsen, By and                     *
through her natural guardian and best              *
friend,                                             *

-8-

                                        *
        Plaintiffs/Appellants,          *
                                        *
                                        *
    v.                                  *
                                        *
                                        *
Burlington Northern and Santa Fe        *
Railway Company, A Delaware             *
Corporation; Montana Rail Link,         *
A Montana Corporation,                  *
                                        *
        Defendants/Appellees.           *
                                        *
    _____               *
                                        *
Judy Schnell, Individually and as       *
natural guardian and next friend of     *
Thorn Schnell and Alyssa Schnell-       *
Voorhees; Warren Voorhees,              *
Individually; Thorn Schnell, by and     *
through his natural guardian, Judy      *
Schnell; Alyssa Schnell-Voorhees, by    *
and through her natural guardian,       *
Judy Schnell,                           *
                                        *
        Plaintiffs/Appellants,          *
                                        *
    v.                                  *
                                        *
Burlington Northern and Santa Fe        *
Railway Company, a Delaware             *
Corporation; Montana Rail Link,         *
                                        *
        Defendants/Appellees.           *
    _____               *
                                        *
Mary St. Onge,                          *
                                        *
        Plaintiff/Appellant,            *

-9-

```
                                        *
                v.                      *
                                        *
Burlington Northern and Santa Fe        *
Railway Company, A Delaware             *
Corporation; Montana Rail Link, Inc.,   *
a Montana Corporation,                  *
                                        *
                Defendants/Appellees.   *
        _____            *
                                        *
Jeff Wallace, individually,             *
                                        *
                Plaintiff/Appellant,    *
                                        *
                v.                      *
                                        *
Burlington Northern and Santa Fe        *
Railway Company, a Delaware             *
Corporation; Montana Rail Link,         *
a Montana Corporation,                  *
                                        *
                Defendants/Appellee.    *
        _____            *
                                        *
Cleta Gable-Nuss,                       *
                                        *
                Plaintiff/Appellant,    *
                                        *
                v.                      *
                                        *
Burlington Northern and Santa Fe        *
Railway Company, a Delaware             *
Corporation; Montana Rail Link, Inc.,   *
a Montana Corporation,                  *
                                        *
                Defendants/Appellees.   *
```

Submitted:   May 11, 2005
Filed:   August 2, 2005

Before WOLLMAN, BYE, and COLLOTON, Circuit Judges.

WOLLMAN, Circuit Judge.

Various residents of Scottsbluff, Nebraska (Plaintiffs) appeal from rulings by the district court[1] adverse to their tort claims against the Burlington Northern and Santa Fe Railroad (BNSF) and Montana Rail Link (MRL).  We affirm.

**I.**

On November 4, 2000, 18 cars from an 84-car freight train operated by BNSF derailed in Scottsbluff.  Benzene and other hazardous chemicals from some of the derailed cars leaked to the air and ground.  Approximately 1,100 Scottsbluff residents were evacuated.

An investigation into the derailment concluded that the accident originated with the coupler that connected car 33 to car 34.[2]  The coupler attached to a slot affixed to the back of car 33, and a metal slab called a draft key (secured by a retainer assembly) ran crosswise through the coupler and the fixed slot.  For unknown reasons, the draft key fell out of the coupler.  As a result, the coupler detached, struck the undercarriage of car 34, and lodged in the switchpoint of the rails.  Car 35

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]We refer to individual cars of the freight train by the numbering system used by the district court.

-11-

derailed when it traveled over the coupler embedded in the tracks. Cars 36 through 52 also derailed.

Two days prior to the derailment, MRL employees had performed a federally mandated inspection of the freight cars at a rail yard in Laurel, Montana.[3] MRL assigned two-man crews to inspect the cars while riding alongside them on four-wheel all terrain vehicles (ATVs). From the ATVs, the inspectors visually inspected various aspects of the cars, including the couplers. The crew assigned to examine the segment of freight cars that included car 33 found no defects. The overall inspection covered 84 cars and took approximately thirty minutes. See Inspection Record (Appellants' App. Vol. 18 at 3266).

Plaintiffs filed various suits against BNSF and MRL in Nebraska state court. As relevant to this appeal, they alleged negligence (contending that MRL's inspectors, as agents of BNSF, negligently inspected the train in Laurel), negligence per se (based on purported violations of federal environmental statutes), and strict liability (asserting that BNSF engaged in an ultrahazardous activity by transporting benzene through populated areas). BNSF and MRL removed the suits to federal court, and the district court consolidated the cases. After the district court dismissed the negligence per se and strict liability claims, Plaintiffs moved to amend their complaints to assert claims based upon a theory of *res ipsa loquitur.* The district court denied that motion. It then granted summary judgment in favor of BNSF and MRL on the negligence claims, concluding that those claims were preempted by federal regulations adopted pursuant to the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101 *et seq*. Plaintiffs appeal from the dismissal of their negligence per se

---

[3]BNSF has leased the Laurel Rail Yard to MRL since 1987. The lease requires MRL to perform inspections on BNSF trains at the Laurel yard.

and strict liability claims, from the denial of their motion to amend their complaints, and from the grant of summary judgment on their negligent inspection claims.[4]

## II.

We review *de novo* the district court's determination that a common law cause of action has been preempted by federal law.  Chapman v. Lab One, 390 F.3d 620, 623 (8th Cir. 2004).  We also review *de novo* the district court's grant of summary judgment.  Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004).  Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Employers Mut. Cas. Co. v. Wendland, 351 F.3d 890, 893 (8th Cir. 2003).  We view the evidence and the inferences that may reasonably be drawn therefrom in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

State law is preempted when it conflicts with or frustrates federal law.  U.S. Const. art. VI, cl. 2; CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663 (1993). Because the FRSA contains an express preemption clause, we begin by focusing on the plain wording of the clause to ascertain Congress' preemptive intent.  Easterwood, 507 U.S. at 664.  The FRSA's preemption clause provides that:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.  A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the

---

[4]Plaintiffs also appeal the district court's denial of their motion for leave to supplement the disclosure of one of their experts, Karl Wolff.  Because Plaintiffs concede that this aspect of their appeal is moot if we affirm the district court's other rulings, see Plaintiffs' Reply Br. at 27, we need not address it.

subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—

(1) is necessary to eliminate or reduce an essentially local safety or security hazard;
(2) is not incompatible with a law, regulation, or order of the United States Government; and
(3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106 (2005).

In Easterwood, the Supreme Court concluded that legal duties imposed on railroads by the common law fell within the scope of the "broad phrases" of the FRSA's preemption clause. 507 U.S. at 664.[5] Nonetheless, regulations adopted pursuant to the FRSA will preempt a particular state law tort claim only if they "substantially subsume" the subject matter of the relevant state law. Id. Because Plaintiffs assert that MRL (as BNSF's agent) negligently inspected the freight cars, we look to the extent to which the regulations adopted pursuant to the FRSA address freight car inspections.

The Federal Railroad Administration (FRA) is authorized to "prescribe regulations and issue orders for every area of railroad safety."[6] The FRA has adopted

---

[5]Although the current version of the FRSA's preemption clause is "worded slightly differently" than the version that the Supreme Court examined in Easterwood, we have noted that the two versions are "identical in substance." Cearley v. Gen. Am. Trans. Corp., 186 F.3d 887, 890 n.5 (8th Cir. 1999). Cf. Chapman, 390 F.3d at 625-26. See also Norfolk S. Ry. Co. v. Shanklin, 529 U.S. 344, 352-53 (2000) (applying Easterwood's holding to a later version of the FRSA's preemption clause).

[6]The authority originates in the FRSA, which authorizes the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety." 49 U.S.C. § 20103. The Secretary has delegated to the FRA the authority

-14-

regulations that require inspections of freight cars at each location where they are placed in a train. 49 C.F.R. § 215.13. Railroads must designate inspectors who "have demonstrated to the railroad a knowledge and ability to inspect railroad freight cars for compliance with the [FRA regulations]." Id. at § 215.11. The FRA's regulations specify that a railroad may not place or continue in service a car that, *inter alia*, has a defective coupler, id. at § 215.123, or a defective draft key retainer assembly, id. at § 215.127.

The regulations also establish a "national railroad safety program" intended "to promote safety in all areas of railroad operations in order to reduce deaths, injuries and damage to property resulting from railroad accidents." Id. at § 212.101(a). Federal and state inspectors "determine the extent to which the railroads, shippers, and manufacturers have fulfilled their obligations with respect to inspection, maintenance, training, and supervision." Id. at § 212.101(b)(1). Inspectors visit rail yards to ensure compliance with the regulations, id. at § 212.213, and railroads face civil penalties for violations. Id. at §§ 215.7 and 215, App. B. To assist federal and state inspectors who monitor the railroads' compliance with the FRA regulations, the FRA has issued a manual that includes "enforcement and inspection strategies" and "interpretations of the codified regulations." See Motive Power and Equipment Enforcement Manual (Appellants' App. Vol. 18 at 3283).

Plaintiffs contend that the FRA's regulations do not substantially subsume the subject matter of their negligent inspection claims because the regulations do not specify the manner in which freight car inspections must be accomplished. But a regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter. Cf. CSX Trans., Inc. v. Williams, 406 F.3d 667, 672 (D.C. Cir. 2005) ("The FRSA preemption provision . . . authorizes

---

to "[c]arry out all functions vested in the Secretary by the [FRSA]," with certain exceptions not applicable here. 49 C.F.R. § 1.49(m).

the court *only* to determine whether the regulation covers the subject matter, leaving it to [the federal agency] to gauge the efficacy of the . . . measures based on the agency's expertise.").[7]  It is clear that the FRA's regulations are intended to prevent negligent inspection by setting forth minimum qualifications for inspectors, specifying certain aspects of freight cars that must be inspected, providing agency monitoring of the inspectors, and establishing a civil enforcement regime.  These intentions are buttressed by the FRA's inspection manual for federal and state inspectors.  Further, there is no indication that the FRA meant to leave open a state tort cause of action to deter negligent inspection.  Cf. Chapman, 390 F.3d at 627 (finding no preemption when the regulations at issue "specifically contemplate the existence of a common-law cause of action for negligence").  Accordingly, we conclude that Plaintiffs' negligent inspection claims are preempted by the FRA's regulations.[8]

## III.

Plaintiffs contend that the district court erroneously applied Nebraska law rather than Montana law to their negligence per se and strict liability claims, resulting in an improper dismissal of those claims.

---

[7]For this reason, we deny Plaintiffs' motion to supplement the record with a 1996 audit report by the Department of Transportation's Inspector General, tendered as evidence of the efficacy of the FRA's regulations.  See Appellant's Motion for Judicial Notice at 2.

[8]Our holding obviates the need to review the district court's denial of Plaintiffs' motion to amend their complaint to assert *res ipsa loquitur* because the *res ipsa* claim also rests on a theory of inadequate inspection and is therefore preempted.  See Proposed Amended Complaint (Appellants' App. Vol. 19 at 3607) (alleging in claims I and II that "in the normal course of events, the failure of the coupler system which caused the derailment would not have occurred unless the defendant conducting the inspection and responsible for maintenance was negligent").

A.

A federal district court sitting in Nebraska must follow Nebraska's conflict of law rules. Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 858 F.2d 1339, 1342 (8th Cir. 1988) (citation omitted). We review *de novo* the district court's application of those rules. FDIC v. Nordbrock, 102 F.3d 335, 337 (8th Cir. 1996). Nebraska has adopted the Restatement (Second) of Conflict of Laws § 146 to determine which state's law applies to a personal injury claim. Malena v. Marriott Int'l, Inc., 651 N.W.2d 850, 853 (Neb. 2002). Section 146 applies to "personal injuries that are caused either intentionally or negligently and to injuries for which the actor is responsible on the basis of strict liability." Rest. (2d) Confl. of Laws § 146, cmt. a. It presumes that the law of the state where the injury occurred determines the rights and liabilities of the parties "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties." Id. at § 146.

Section 145 of the Restatement lists four "contacts" that should be considered in determining which state has the more significant relationship: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." Id. at § 145(2). Contrary to Plaintiffs' contentions, it is clear that the section 145 contacts favor applying Nebraska law to the state law claims. The injuries occurred in Nebraska. Both the strict liability claims (that the transport of benzene through Scottsbluff was an ultrahazardous activity) and the negligence per se claims (that the release of chemicals after the derailment violated federal environmental statutes) assert that the conduct causing the injury occurred in Nebraska. Most (if not all) of the plaintiffs are Nebraska residents. And the only relationship between the parties derives from the derailment, which occurred in Nebraska.

The section 145 contacts "must be balanced in accordance with their significance to the general principles under § 6(2)" of the Restatement. Malena, 651 N.W.2d at 857. Those principles include: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result; and (7) ease in the determination and application of the law to be applied. Rest. (2d) Confl. of Laws § 6. None of these principles raises concerns sufficient to overcome the section 146 presumption, buttressed by the application of the section 145 contacts, that Nebraska law applies to the state tort claims at issue here.

B.

Having concluded that the district court correctly determined that Nebraska law applies to Plaintiffs' strict liability and negligence per se claims, we turn to the district court's dismissal of those claims, which we review *de novo*. Knouse v. Gen. Amer. Life Ins. Co., 391 F.3d 907, 911 (8th Cir. 2004). We also review *de novo* the district court's interpretation of state law. Boerner v. Brown & Williamson Tobacco Corp., 260 F.3d 837, 841 (8th Cir. 2001) (citation omitted).

We agree with the district court's conclusion that the violation of a regulation or statute is generally not recognized as negligence per se under Nebraska law. See Fuhrman v. State, 655 N.W.2d 866, 874 (Neb. 2003); Goodenow v. Dept. of Corr. Serv., 610 N.W.2d 19, 22 (Neb. 2000) ("a violation of a statute or regulation ordinarily is not negligence per se, but is only evidence of negligence" (citing Maresh v. State, 489 N.W.2d 298 (Neb. 1992)); Tank v. Peterson, 363 N.W.2d 530, 537 (Neb.

-18-

1985) (violations of Federal Aviation Administration regulations did not constitute negligence per se).[9]

We also agree with the district court that Nebraska has not yet decided whether to adopt a cause of action of strict liability for ultrahazardous or abnormally dangerous activities. See, e.g., Anderson v. Nashua Corp., 519 N.W.2d 275, 281 (Neb. 1994) ("the doctrine of strict liability for ultrahazardous activities has not been adopted in Nebraska, but neither has it been repudiated"). Accordingly, we must attempt to predict what the Supreme Court of Nebraska would decide if it were to address the issue in this case. Jurrens v. Hartford Life Ins. Co., 190 F.3d 919, 922 (8th Cir. 1999) (citation omitted). In so doing, we may consider "relevant state precedent, analogous decisions, considered dicta, scholarly works, and any other reliable data." Ventura v. Titan Sports, Inc., 65 F.3d 725, 729 (8th Cir. 1995).

The Supreme Court of Nebraska has consistently declined to reach the question of strict liability when an insufficient evidentiary basis exists for concluding that a particular activity is ultrahazardous. See, e.g, Bargmann v. Soll Oil Co., 574 N.W.2d 478, 486 (Neb. 1998) ("There is no evidence or claim that the storing of petroleum products in tanks is an abnormally dangerous activity; thus we need not decide whether we would impose strict liability . . . ."); Anderson, 519 N.W.2d at 281.

---

[9]The only modern Nebraska case to the contrary is Oddo v. Speedway Scaffold Co., which held that a "[b]reach of the duty imposed by [a state statute governing scaffolding safety] constitutes negligence per se, not merely evidence of negligence." 443 N.W.2d 596, 603 (Neb. 1989). Oddo cited Johnson v. Weborg, another case involving scaffolding safety, in which the court observed that "[i]n construing legislation of the class herein considered, this court has long followed the rule that a failure to perform a mandatory duty enjoined by statute is negligence per se." 7 N.W.2d 65 (Neb. 1942) (emphasis added). Whatever recognition of the concept of negligence per se that Oddo and Johnson have extended to actions brought under state statutes addressing workplace safety does not encompass the federal environmental statutes at issue here.

-19-

Plaintiffs' bare allegation that the transport of benzene by rail through populated areas is ultrahazardous is similarly bereft of evidentiary support. We predict that the Supreme Court of Nebraska would decline to reach the issue of strict liability based upon the evidence set forth in this case. Accordingly, the district court properly dismissed those claims.

The judgment is affirmed.

_____