# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-3721

_____

Wayne F. Wuebker; Janet E.
Wuebker,

        Appellants,

v.

Wilbur-Ellis Company,

        Appellee.

_____

Crop Life America,

        Amicus on behalf
        of Appellee.

\*   Appeal from the United States
\*   District Court for the
\*   Southern District of Iowa.

_____

Submitted: June 24, 2005
Filed: August 15, 2005

_____

Before MORRIS SHEPPARD ARNOLD, McMILLIAN, and COLLOTON, Circuit
    Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This case requires us to consider whether the Federal Insecticide, Fungicide, and Rodentcide Act (FIFRA), 7 U.S.C. §§ 136-136y, and a related Environmental Protection Agency (EPA) regulation, 40 C.F.R. § 153.155(b), preempt the state-law tort claims of Wayne Wuebker and his wife, Janet Wuebker. We conclude that the Wuebkers' claims are not preempted and reverse the order of summary judgment entered against them.

I.

Mr. Wuebker became seriously ill after using Agrox Premiere, a pesticide produced by Wilbur-Ellis as a hopper box seed treatment. (We understand a hopper box seed treatment to be a pesticide designed to be applied to seeds which are about to be planted.) The label for Agrox Premiere instructs those using it to wear certain protective gear; Mr. Wuebker did not wear the gear.

Invoking diversity jurisdiction, the Wuebkers filed a complaint against Wilbur-Ellis in federal district court alleging four state-law claims: defective design, breach of implied warranty of fitness for a particular use, breach of implied warranty of merchantability, and recklessness. The gist of these claims is that Agrox Premiere is defective because it is the same color as the soil in the Wuebkers' geographical area, so users of the product cannot tell whether they have soil or the chemical on their skin. (In the district court, the Wuebkers also complained that Agrox Premiere does not emit a distinct odor or cause an immediate skin irritation, but they have abandoned these arguments on appeal.) Wilbur-Ellis moved for summary judgment on the grounds that FIFRA and an EPA regulation preempt the Wuebkers' tort claims. The district court granted the motion, concluding that FIFRA expressly preempts the Wuebkers' tort claims and that the regulation impliedly preempts them.

II.

On appeal, the Wuebkers challenge both of the district court's bases for entering summary judgment in favor of Wilbur-Ellis. We review a district court's decision to grant summary judgment *de novo*, viewing the record favorably to the nonmoving party. *In re MJK Clearing, Inc.*, 408 F.3d 512, 515 (8th Cir. 2005). Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We begin our review with the express preemption arguments.

The preemption doctrine derives from the Constitution's supremacy clause, which states that laws of the United States made pursuant to the Constitution are the "supreme Law of the Land." U.S. Const. Art. VI, cl. 2. "[S]tate laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid," or preempted. *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 211 (1824)). Congressional intent is the touchstone for determining the preemptive effect of a statute. *See English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990). Courts discern an intent to preempt state law when Congress expressly forbids state regulation (express preemption), when it creates a scheme of federal regulation so pervasive that the only reasonable inference is that it meant to displace the states (field preemption), and when a law enacted by it directly conflicts with state law (conflict preemption). *Id*. With an exception not relevant to this case, preemption is an affirmative defense. *Chapman v. LabOne*, 390 F.3d 620, 624-25 (8th Cir. 2004).

Wilbur-Ellis argues that FIFRA expressly preempts the Wuebkers' tort claims. Section 136v(b) of the Act provides that a state "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b). Wilbur-Ellis contends that the Wuebkers' claims constitute challenges to the adequacy of FIFRA's labeling

-3-

requirements because at bottom they are complaining about the lack of a warning, a chemical warning, not required by the Act. Thus, Wilbur-Ellis argues, the Wuebkers' claims run afoul of § 136v(b). The Wuebkers respond simply that their claims center on a design defect in the product and, if successful, would not require Wilbur-Ellis to label or package its product in any particular way.

We conclude that § 136v(b) does not expressly preempt the Wuebkers' claims because the legal rules that underlie these claims do not require Wilbur-Ellis to label or package Agrox Premiere in any particular way. In *Bates v. Dow Agrosciences LLC*, 125 S. Ct. 1788 (2005), the Supreme Court addressed § 136v(b)'s preemptive scope. It explained that "[r]ules that require manufacturers to design reasonably safe products, ... to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for 'labeling or packaging.' " *Bates*, 125 S. Ct. at 1798. The reason: "[n]one of these common law rules requires that manufacturers label or package their products in any particular way." *Id.* In other words, the Court, focusing on the word "requirements" in the statute, concluded that § 136(v)(b) preempts claims based on legal rules that require manufacturers to label or package their pesticides in certain ways, but does not preempt claims that might induce, but are not based on rules that require, certain labeling or packaging decisions. *Id.* at 1798-99. Under these principles, the Wuebkers' claims (for defective design, breach of implied warranty of fitness for a particular use, breach of implied warranty of merchantability, and recklessness), as pleaded, are not preempted because, like those approved by the Supreme Court in *Bates*, the rules underlying them do not require anything in the way of labeling or packaging. (We add the proviso "as pleaded" because an implied warranty of merchantability claim in Iowa can be based on the adequacy of a good's packaging and labeling.) Instead, the rules set requirements for product design.

### III.

We now turn to the question of whether an EPA regulation conflicts with, and thereby impliedly preempts, the Wuebkers' claims. Federal regulations can preempt state laws, and they do so if the agency, acting within the scope of its delegated authority, intends them to. *Chapman*, 390 F.3d at 624-25. A court will find that an agency intends for a regulation to preempt a state law when a regulation conflicts with a state law. *See generally Geier v. American Honda Motor Co.*, 529 U.S. 861, 884 (2000). This so-called conflict preemption, which is a kind of implied preemption, *id.*, occurs when it is impossible for a private party to comply with both state and federal law, and when state law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of [the relevant agency].' " *See id*. at 873 (*quoting Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). There is a presumption against preemption in areas of traditional state regulation, *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151 (2001), and states have traditionally regulated manufacturers of poisonous substances, like pesticides, through tort law. *Bates*, 125 S. Ct. at 1801. This presumption is overcome if it was the "clear and manifest purpose of [the agency]" to supersede state authority. *Rice v. Santa Fe Elevator Co.*, 331 U.S. 218, 230 (1947).

Section 136w(c)(5) of FIFRA empowers the EPA "to prescribe regulations requiring any pesticide to be colored or discolored if [it] determines that such requirement is feasible and is necessary for the protection of health and the environment." 7 U.S.C. § 136w(c)(5). Pursuant to this grant of authority, the EPA has established by regulation that "[p]esticide products intended for use in treating seeds must contain an EPA-approved dye to impart an unnatural color to the seed ." 40 C.F.R. § 153.155(a). The EPA has also decided, however, that "[p]roducts intended and labeled for use solely as at-planting or hopper box treatments" are "exempt from the [coloration] requirement." *Id.* at § 153.155(b)(2).

Wilbur-Ellis argues that § 153.155 preempts the Wuebkers' claims because it specifically authorizes distribution of Agrox Premiere without any coloration. (No one disputes that Agrox Premiere is exclusively a hopper box treatment.) According to Wilbur-Ellis, the premise of the Wuebkers' claims – that Agrox Premiere needs to be dyed to be safe for people applying it – "directly conflicts with EPA's pesticide coloration regulations, which reflect EPA's long-standing policy determination that pesticides do not need to be dyed to protect the health or safety of applicators." Thus, it concludes, allowing a jury to impose liability would frustrate the EPA's purposes and objectives. The Wuebkers respond that there is no record that the EPA has ever specifically addressed the question of whether hopper box pesticides should be dyed to ensure the safety of applicators, and that absent such a record, we should not conclude that liability under state law would stand as an obstacle to the EPA accomplishing its goals.

We hold that the Wuebkers' claims are not preempted by § 153.155. The existence *vel non* of a conflict depends on whether the EPA intended for § 153.155 to be a minimum standard that could be supplemented by the states, *see Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 147-48 (1963), or whether it intended for that section to be the full extent of coloration regulation, *see Geier*, 529 U.S. at 874-82. If the former is true, then Wuebkers' claims are not preempted; if the latter is true, then they are preempted. We can find nothing in the language of the regulation or in its history (as outlined in the Federal Register) that indicates whether the EPA meant for it to be a regulatory floor or ceiling. In light of the dearth of evidence about the EPA's intent, we cannot conclude that it was the "clear and manifest purpose of [the EPA]" to prohibit states from requiring that pesticides used exclusively on hopper box seeds be colored or discolored, *see Santa Fe Elevator*, 331 U.S. at 230, and the presumption against preemption obliges us to conclude that the regulation does not preempt the Wuebkers' claims.

## IV.

Wilbur-Ellis also argues in passing that the Wuebkers' claims conflict with "FIFRA's objective of promoting compliance with pesticide labeling."  The Agrox Premiere label instructed Mr. Wuebker to wear certain protective gear which he did not wear, and, Wilbur-Ellis insists, we would provide people with an incentive not to comply with safety instructions included on pesticide labels if, under these circumstances, we do not hold that the Wuebkers' claims are preempted.  To show that label compliance is one of FIFRA's objectives, Wilbur-Ellis notes that FIFRA makes it "unlawful for any person ... to use any registered pesticide in a manner inconsistent with its labeling."  7 U.S.C. 136j(a)(2)(G).

We are not persuaded by this argument.  Preemption is a question of congressional intent.  Wilbur-Ellis suggests that Congress, to foster compliance with labels in the name of safety, intended to preempt product-liability suits unrelated to labeling if the plaintiff disregarded instructions on the label of the pesticide he or she was using.  We doubt, however, that it was Congress's intention to foster compliance with pesticide labels "at all costs."  *See Pacific Gas & Electric Co. v. State Energy Resources Conservation and Dev. Comm'n*, 461 U.S. 190, 222 (1983).  Accepting Wilbur-Ellis's argument would require us to impute to Congress an intention to replace state tort law as the primary regulator of personal behavior in a very significant way.  We are not inclined to do that.  The goal of safety, moreover, may well be better served by allowing product liability suits by plaintiffs who have not followed the labels' instructions:  such suits would provide manufacturers with the proper incentive to manufacture and sell safe pesticides, *see Bates*, 125 S. Ct. at 1801-02, and tort law principles like comparative fault would eliminate the users' incentives to ignore the labels.  In any event, we cannot say that Wilbur-Ellis has overcome the presumption against preemption by establishing that Congress's "clear and manifest purpose" was to supersede state regulatory authority.  *See Santa Fe Elevator*, 331 U.S. at 230.

## V.

For the reasons indicated, we conclude that the Wuebkers' state-law claims are not preempted. We therefore reverse the district court's order of summary judgment in favor of Wilbur-Ellis, and we remand the case for proceedings consistent with this opinion.

_____