| WILLIAM BENNETT AND | * | NO. 2023-C-0202 |
| SHERYLANN BENNETT | | |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| NORFOLK SOUTHERN | | FOURTH CIRCUIT |
| RAILWAY COMPANY | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-00306, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown)

Patrick Talley, Jr.
R. Harrison Golden
365 Canal Street, Suite 2000
New Orleans, LA 70130

    COUNSEL FOR RELATOR

Gilbert V. Andry, IV
Michael J. Winsberg
829 Baronne Street
New Orleans, LA 70113

    COUNSEL FOR RESPONDENTS

        **WRIT GRANTED, JUDGMENT REVERSED, AND
        JUDGMENT RENDERED
        April 28, 2023**

This is a tort suit. The Relator—Norfolk Southern Railway Company ("Norfolk")—seeks review of the trial court's February 27, 2023 judgment denying its summary judgment motion. In accordance with the requirements of La. C.C.P. art. 966(H),[1] we ordered additional briefing by the parties and heard oral arguments. For the reasons that follow, we grant Norfolk's writ, reverse the trial court's judgment denying its summary judgment motion, and render summary judgment dismissing all the claims filed by the Respondents—William and Sherylann Bennett ("the Bennetts")—against Norfolk.

---

[1] La. C.C.P. art. 966(H) provides as follows: "[o]n review, an appellate court shall not reverse a trial court's denial of a motion for summary judgment and grant a summary judgment dismissing a case or a party without assigning the case for briefing and permitting the parties an opportunity to request oral argument."

1

**PROCEDURAL AND FACTUAL HISTORY**

In January 2019, the Bennets travelled under a railroad bridge on Marconi Drive in New Orleans, Louisiana. Contemporaneously, one of Norfolk's trains was travelling along the railroad bridge above. While the Bennetts' vehicle was under the bridge, a satellite dish fell from above onto their vehicle. One year later the Bennetts filed suit against Norfolk, claiming personal injuries and property damages.

In their original petition, the Bennetts alleged that the satellite dish was either cargo on the train or was affixed to the train—and that it had fallen from the train as the Bennetts passed underneath the bridge due to Norfolk's failure to secure the satellite. The Bennetts later supplemented and amended their petition, alleging that the satellite had fallen from the railroad bridge itself, rather than from the train. In their amended petition, the Bennetts claimed Norfolk was liable for failing to properly inspect and maintain the bridge, failing to clear debris from the bridge, and failing to warn traffic of the debris.

Through discovery, the Bennetts developed a theory that the satellite dish had dislodged from the roof of another vehicle passing under the railroad bridge. According to the Bennetts, when the other vehicle struck the underside of the

bridge, the satellite dish became wedged in the beams of the bridge's undercarriage until falling onto the Bennetts' vehicle. The Bennetts supported this theory with a private investigator's report. The investigator's report included photographs of objects wedged into the underside of the bridge taken after the Bennetts' accident and photographs of the satellite dish that fell on the Bennetts' vehicle. According to the Bennetts, the photographs of the satellite dish demonstrated that it was bent in ways that corresponded with the configuration of the beams under the bridge and had paint scuffs matching the color of the beams under the bridge.

Nearly a year after suit was filed, Norfolk filed a summary judgment motion, seeking dismissal of all of the Bennetts' claims against it. Norfolk contended that its train that was passing at the time of the accident was not carrying any satellite dishes as cargo. Norfolk further contended that neither its train nor the railroad bridge itself had any satellite dishes attached to it. Norfolk attached to its motion the Bennetts' deposition testimony. In their depositions, the Bennetts testified that they did not observe where the satellite fell from and that they were unaware of any witness with such knowledge. For these reasons, Norfolk submitted that the Bennetts could not carry their burden of proof.

Further, Norfolk—accepting as true the Bennetts' theory that the satellite dish was lodged in the undercarriage of the bridge by a passing vehicle colliding with the bridge—responded that no evidence existed that Norfolk had knowledge of either the alleged collision by another vehicle or the ensuing hazardous condition. Absent evidence of actual or constructive notice, Norfolk argued that the Bennetts could not meet their burden of proof under La. C.C. art. 2317.1,[2] the statute underlying their negligence claims. Norfolk supported this argument with evidence that it had inspected the rail bridge six months before the Bennetts' accident and found no defects or debris and it had received no reports of vehicular impact to the bridge or hazardous debris lodged in the underside of the bridge between its most recent inspection and the Bennetts' accident.

Alternatively, Norfolk argued that the Federal Railroad Safety Act ("FRSA") regulations preempt the Bennetts' state law negligence claims against Norfolk. Again accepting as true the Bennetts' theory that the satellite had been lodged in the underside of the bridge during another vehicle collision, Norfolk

---

[2] Article 2317.1 of the Louisiana Civil Code provides, in pertinent part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

contended that the federal regulations enacted pursuant to the FRSA—which govern railroad bridge maintenance and inspection—subsume the subject matter of the Bennetts' state law negligence claims. Because federal regulations cover the subject matter of the duties allegedly breached by Norfolk, Norfolk argued that the Bennetts' claims must be dismissed as preempted by the FRSA.

In opposing the summary judgment motion, the Bennetts maintained that Norfolk had a duty to discover and remove the satellite dish and any other objects lodged in the undercarriage of the railroad bridge. By failing to implement a plan specifically addressing inspections of the underside of its railroad bridge for debris, the Bennetts submitted, Norfolk breached this duty. Addressing FRSA preemption, the Bennetts argued that the pertinent federal regulations, 49 C.F.R. 237.101, *et seq.*, pertained only to the structural integrity of railroad bridges and are silent on Norfolk's duty to discover and remove debris from the undercarriage of railroad bridges. The Bennetts contended that the omission of a federal regulation on this particular subject matter placed their claims beyond the purview of FRSA preemption.

At the conclusion of the hearing on Norfolk's summary judgment motion, the trial court denied the motion, finding factual disputes precluded summary judgment. This writ application followed.

**DISCUSSION**

*The Parties' Positions*

In its writ application, Norfolk limits its argument in this court to the preemption issue. Norfolk contends that preemption is a legal question warranting summary judgment. According to Norfolk, the facts alleged by the Bennetts are undisputed for purposes of this motion and demonstrate that the federal FRSA regulations preempt the Bennetts' state law negligence claims. Norfolk, thus, contends it is entitled to summary judgment.

Opposing Norfolk's preemption argument, the Bennetts make two counter arguments. First, the Bennetts contend that the FRSA regulations preempt state law only when the speed and operation of a train is at issue. Second, the Bennetts repeat their argument that the silence of federal regulations concerning hazardous conditions underneath railroad bridges exempts the state law duty advanced in their negligence action from FRSA preemption.

*Standard of Review and Summary Judgment Principles*

6

Appellate courts review a trial court's judgment on a summary judgment motion *de novo*. *See Planchard v. New Hotel Monteleone, LLC*, 21-0347, p. 2 (La. 12/10/21), 332 So.3d 623, 625.  In so doing, appellate courts apply the same criteria that govern the trial court's decision as to whether a summary judgment motion should be granted—"whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law."  *Planchard*, 21-00347, pp. 2–3, 332 So.3d at 625.  The statutory provision that governs a summary judgment motion states that a summary judgment motion "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."  La. C.C.P. art. 966(A)(3).  The burden of proof on a summary judgment motion is governed by La. C.C.P. art. 966(D)(1), which provides for a shifting burden of proof.

An adverse party to a supported summary judgment motion may not rest on the mere allegations or denials of that party's pleading, but that party's response—either by affidavits or as otherwise provided by law—is required to set forth specific facts showing the existence of a genuine issue of material fact for trial.  If the adverse party fails to do so, the trial court is required to render summary judgment against that party. La. C.C.P. art. 967(B).[3]

---

[3] La. C.C.P. art. 967(B) provides:

The summary judgment procedure is favored and "designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). The purpose of the procedure is to pierce the pleadings and to assess the evidence to determine if there are any genuine issues of material fact requiring a trial. *See Cutrone v. English Turn Prop. Owners Ass'n, Inc*., 19-0896, p. 7 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1214. As this court has observed, "[t]he determination of whether a fact is material turns on the applicable substantive law." *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270.

Pure questions of law—such as whether the undisputed material facts demonstrate that federal law preempts state law—are appropriate for resolution by summary judgment. *See Cart v. Missouri Pac. R.R. Co.*, 99-1118 (La. App. 3 Cir. 12/8/99), 752 So.2d 241 (affirming grant of summary judgment finding the FRSA preempted state law negligence claims); *Hendrickson v. Guillory*, 2008-0930, p. 4 (La. App. 4 Cir. 5/18/09), 15 So.3d 256, 258 (observing that "[t]he question of whether a duty exists in a particular set of circumstances is a question of law for

When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

8

the court to decide. Summary judgment procedure is well suited to the resolution of questions of law.").

*Federal Preemption and the Federal Railroad Safety Act*

Federal preemption derives from the Supremacy Clause of the United States Constitution. The Constitution establishes the laws of the United States as "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, any state law that conflicts with federal laws or regulations is preempted. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993). Congress enacted the FRSA "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. To that end, the FRSA grants the Secretary of Transportation broad powers to "prescribe regulations and issue orders for every area of railroad safety." 49 U.S.C. § 20103. To ensure national uniformity of laws, regulations, and orders related to railroad safety and security, Congress enacted a preemption provision within the FRSA. 49 U.S.C. § 20106 (the "Preemption Provision"). The Preemption Provision provides as follows:

(a) National uniformity of regulation.--

(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

9

(2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--

> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;

> (B) is not incompatible with a law, regulation, or order of the United States Government; and

> (C) does not unreasonably burden interstate commerce.[4]

49 U.S.C. § 20106.

Under the Preemption Provision, state law may regulate railroad safety, but only "until the Secretary of Transportation . . . prescribes a regulation . . . covering the subject matter of the State requirement."  49 U.S.C. § 20106 (a)(2).  Once the Secretary of Transportation issues a regulation covering the subject matter of the State requirement, the state law is preempted, unless the state law meets all conditions of 49 U.S.C. § 20106(a)(2)(A) – (C) (the "Savings Clause").

---

[4] In 2007, Congress amended 49 U.S.C. § 20106 to permit an action under state law seeking damages for personal injury, death, or property damage alleging that a party has failed to comply with the standard of care established by a federal regulation or that a party has failed to comply with its own plan, rule, or standard created pursuant to a federal regulation.  49 U.S.C. § 20106(b).  Because the Bennetts do not allege that Norfolk failed to comply with any federal standard of care or with its own plan, rule, or standard created pursuant to federal regulation, we do not address this subsection.

Under the framework set forth by the Preemption Provision, we must first determine whether federal regulations cover the same subject matter as the Bennetts' claims. If so, we must examine whether the Savings Clause nevertheless permits the Bennetts to pursue their state law negligence claims.

To prevail on its claim that federal regulations preempt the Bennetts' claims, Norfolk must show that a federal regulation covers the subject matter of the duties that the Bennetts, in their state law negligence claims, allege were breached.[5] To establish that regulations cover the subject matter of the Bennetts' claims, Norfolk "must establish more than that they 'touch upon' or 'relate to' that subject matter, for 'covering' is a more restrictive term which indicates that preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." *Easterwood*, 507 U.S. at 664, 113 S.Ct. at 1738.

In *Easterwood*, a wrongful death action, the Supreme Court held that the FRSA preempted state law negligence claims against a train owner and operator for operating a train at an excessive speed because federal regulations enacted pursuant to the FRSA covered the subject matter of train speed. 507 U.S. at 675,

---

[5] State laws preempted by the FRSA includes positive enactments by states and localities (*e.g.*, state statutes, regulations, rules, etc.) and duties—like those that the Bennetts allege Norfolk breached in their negligence claims—arising in the context of tort actions for damages. *See Easterwood*, 507 U.S. at 664, 113 S.Ct. at 1737 ("Legal duties imposed on railroads by the common law fall within the scope of [FRSA] preemption.").

113 S.Ct. at 1743. In concluding that the regulations covered the subject matter of train speed, the Supreme Court examined not only the regulations establishing maximum train speeds but also related regulations addressing hazards posed by track conditions. *Easterwood*, 507 U.S. at 674, 113 S.Ct. at 1742. Given the overall structure of the regulations, the Supreme Court found that the speed limits not only established a ceiling on train speed but also precluded additional state regulation on the subject. *Id*.

Following the analytical course established by *Easterwood*, we look to the totality of federal regulations related to the duties at issue here to determine whether the federal regulations substantially subsume the subject matter. Railroad bridge safety standards, including inspection and maintenance, are governed by 49 C.F.R. § 237.1, *et seq*. Pursuant to these regulations, railroad bridge owners must adopt a bridge management program. Within the adopted bridge management program, a railroad bridge owner must implement a bridge inspection program that establishes, at minimum, safety considerations and the required detail of inspections. *See* 49 C.F.R. §§ 237.31–237.33. The federal regulations further mandate that, under the adopted bridge management program, each bridge in service be inspected "at least once in each calendar year, with not more than 540

12

days between any successive inspections," and that a bridge be inspected more frequently when a railroad bridge engineer determines that such increased frequency is necessary. 49 C.F.R. § 237.101. An adopted bridge management program must define requirements for the special inspection of a bridge when the bridge is involved in events such as flood, fire, earthquake, derailment, or vehicular impact. *Id*. The procedures and conduct of railroad bridge inspections must be established, overseen, and conducted by railroad bridge engineers, inspectors, and supervisors, who must possess particular qualifications and education as mandated by the federal regulations. 49 C.F.R. §§ 237.51, 237.55, 237.103, and 237.107.

The regulatory framework of 49 C.F.R. § 271.1, *et seq*., is expansive, touching on a wide range of issues concerning the inspection, maintenance, and repair of railroad bridges. The regulations establish minimum safety requirements while mandating additional safety measures be devised and implemented through plans developed and overseen by qualified professionals as appropriate for the particularities of each railroad bridge. Given the broad nature of their structure, the regulations must be read as both establishing the minimum requirements for inspection and maintenance of railroad bridges and precluding additional state law

13

requirements of the sort the Bennetts propose. Thus, the totality of the federal regulations on the subject matter suggest that they cover the Bennetts' claims.

In their opposition, the Bennetts cite *Easterwood* in support of their argument that the FRSA does not cover claims beyond the context of train speed and operation. This argument ignores an abundance of caselaw to the contrary. Although the issue of FRSA preemption in the context of railroad bridge inspection and maintenance appears to be *res nova*, many courts have found FRSA preemption in analogous contexts beyond train speed and operation. In *Lundeen v. Canadian Pacific Ry. Co.*, 507 F.Supp.2d 1006 (D. Minn. Feb. 2, 2007), *Mehl v. Canadian Pac. Ry., Ltd.*, 417 F.Supp.2d 1104 (D.N.D. 2006), and *Federal Ins. Co. v. Burlington Northern and Santa Fe Railway Co.*, 270 F.Supp.2d 1183 (C.D. Cal. July 7, 2003), the courts found that the FRSA preempted claims for negligent inspection and maintenance of railroad tracks.

Similarly, in *Cart*, 99-1118, 752 So.2d 241, the Louisiana appellate court held that the FRSA preempted plaintiffs' negligence claims for misclassification of a railroad track. Likewise, in *Furlough v. Union Pac. R.R. Co.*, 33,658 (La. App. 2 Cir. 8/31/00), 766 So.2d 751 and *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170 (3d Cir. 2013), the courts held that the FRSA preempted negligence claims for

14

failure to install adequate warnings at a train crossing. By analogy, we find that the federal regulations on railroad bridge inspection and maintenance likewise cover the Bennetts' state law negligence claims for Norfolk's alleged failure to inspect and maintain the underside of its railroad bridge. Accordingly, we find the Bennetts' first argument in opposition unpersuasive.

The Bennetts next argue that, because the federal regulations are silent on the duty to inspect the underside of railroad bridges for hazardous conditions, the FRSA does not cover a state law negligence action for Norfolk's alleged breach of this duty. Although federal regulations do not prescribe a specific procedure or timeline to inspect the underside of railroad bridges for debris, the omission of standards governing this duty does not necessarily exempt it from preemption under the FRSA. *See In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005) (federal regulations' omission of prescribed manner of freight car inspection did not prevent FRSA preemption of state claim for negligent freight car inspection). "[A] regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter." *Id*. "The FRSA preemption provision . . . authorizes the court only to determine whether the regulation covers the subject matter, leaving it to [the federal agency] to gauge the

efficacy of the . . . measures based on the agency's expertise." *CSX Trans., Inc. v. Williams*, 406 F.3d 667, 672 (D.C. Cir. 2005).

Given the wide variation in railroad bridge design, construction, location, and traffic, it would be impractical to impose inspection standards for every particular hazard that might arise in every railroad bridge nationwide. The omission of standards for the inspection of the underside of railroad bridges does not necessarily mean that a claim for breach of this alleged standard is exempt from preemption under the FRSA. Instead, the omission evinces the intent to permit flexibility in establishing a bridge management plan tailored to the particularities of each railroad bridge.[6] We, thus, find the Bennetts' second argument in opposition to preemption unpersuasive.

Given the comprehensive nature of 49 C.F.R. § 237.1, *et seq.*, governing the inspection and maintenance of railroad bridges, we find that federal FRSA

---

[6] The intent of the Secretary of Transportation to permit flexibility in railroad bridge management programs is evident throughout the pertinent regulations in their mandate that railroad bridge owners adopt their own bridge management programs and designate responsibility for developing tailored inspection and maintenance standards to qualified railroad bridge engineers. *See*, *e.g.*, 49 C.F.R. §§ 237.31 and 237.103 (b) (mandating a railroad bridge engineer specify inspection procedures within a bridge management program as appropriate to the bridge configuration, prior inspection conditions, nature of traffic, and vulnerability to damage); *see also Williams*, 406 F.3d at 672 (observing that the omission of particular security requirements from federal FRSA regulations indicated that "[the Department of Transportation] decided that security will best be achieved by adopting performance standards and giving railroads the flexibility to adjust their security plans to their individual circumstances.").

regulations substantially subsume the subject matter of the Bennetts' negligence claims. As such, the federal FRSA regulations preempt the Bennetts' state law negligence claims unless the duties arising under their claims satisfy all of the criteria in the Savings Clause. *See* 49 U.S.C. § 20106.

A state law negligence claim imposing a more stringent regulation to railroad safety may survive preemption when it:

> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
>
> (B) is not incompatible with a law, regulation, or order of the United States Government; and
>
> (C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106(a)(2).

Here, the duty to inspect the underside of railroad bridges, as alleged by the Bennetts, does not satisfy the first criteria of the Savings Clause—that it is "necessary to eliminate or reduce an essentially local . . . hazard." Norfolk's designated corporate representative testified that Norfolk owns 750 railroad bridges in his territory alone and that Norfolk's railroad bridges are struck by vehicles frequently. Given the multitude of railroad bridges throughout the nation, coupled with the frequency of vehicular collisions with railroad bridges, there is no

17

evidence that debris left in the underside of railroad bridges is a hazard essentially local to any particular state or city in the nation, much less Louisiana or New Orleans in particular.

Because the duty raised by the Bennetts' negligence claims is not necessary to eliminate or reduce an essentially local hazard—a necessary criteria for applicability of the Savings Clause—we pretermit discussion of the remaining criteria. Moreover, given our conclusion (explained elsewhere in this opinion) that federal regulations substantially subsume the subject matter of the Bennetts' state law negligence claims, we find that federal FRSA regulations preempt the Bennetts' state law negligence claims. Accordingly, we find Norfolk is entitled to summary judgment dismissing the Bennetts' claims against it.

## DECREE

For the foregoing reasons, we grant the Norfolk's writ, reverse the trial court's February 27, 2023 judgment denying Norfolk's summary judgment motion, and render summary judgment dismissing the Bennetts' claims against Norfolk.

**WRIT GRANTED, JUDGMENT REVERSED, AND JUDGMENT RENDERED**

18